1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  ALEXANDER MODESTO,                    Case No.  1:23-cv-00322-BAM

12              Plaintiff,
                                          **ORDER REGARDING PLAINTIFF'S**
13        v.                              **MOTION FOR SUMMARY JUDGMENT**

14  MARTIN O'MALLEY, Commissioner of      (Docs. 11, 15.)
    Social Security,[1]
15
16              Defendant.

17

18

19                         **INTRODUCTION**

20        Plaintiff Alexander Modesto ("Plaintiff") seeks judicial review of a final decision of the

21  Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance

22  under Title II of the Social Security Act.  The parties' briefing on the motion was submitted, without

23  oral argument, to Magistrate Judge Barbara A. McAuliffe.  (Docs. 11, 15, 16.)[2]

24

25

26  _____
    [1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to
27  Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi
    as Defendant in this suit.
    [2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case,
28  including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 4, 6, 7.)

                                      1

1   Having considered the parties' briefs, along with the entire record in this case, the Court finds

2   that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

3   record and is based upon proper legal standards.  Accordingly, this Court affirms the agency's

4   determination to deny benefits.

5   ## FACTS AND PRIOR PROCEEDINGS

6   Plaintiff applied for Title II Disability Insurance on October 22, 2020, alleging that he became

7   disabled on November 1, 2014.  AR 182-88.[3]  Plaintiff's application was denied initially on November

8   4, 2020, and on reconsideration on February 4, 2021.  AR 55-67; 68-81.  Plaintiff requested a hearing

9   before an administrative law judge ("ALJ") and ALJ Scot Septer held a hearing on January 18, 2022.

10  AR 28-54.  ALJ Septer issued an order denying benefits on the basis that Plaintiff was not disabled on

11  January 28, 2022.  AR 12-27.  Plaintiff sought review of the ALJ's decision, which the Appeals

12  Council denied.  AR 1-6.  This appeal followed.

13  **January 18, 2022 Hearing Testimony**

14  ALJ Scot Septer held a telephonic hearing on January 18, 2022.  AR 28-54.  Plaintiff appeared

15  and was represented by his attorney, Robert Ishikawa.  Thomas Mitchell, an impartial vocational

16  expert, also appeared and testified.  AR 46-52.  Plaintiff's attorney stated that the record was

17  considered complete and that Plaintiff had no objections to anything that was part of the record.  AR

18  33.  The ALJ admitted exhibits 1A through 4A, 1B through 13B, 1D through 7D, 1E through 14E, and

19  1F through 5F into evidence.  *Id.*

20  Plaintiff noted at the start that he had a hearing problem, was "pretty well deaf in one ear" and

21  could only hear with a hearing aid in his other ear.  AR 34.  Plaintiff's attorney Mr. Ishikawa noted in

22  his opening that Plaintiff's file was consistent with a finding of light to less than light work, as

23  evidenced by his diagnostic evidence that was taken prior to his date last insured and after the alleged

24  onset date.  AR 35.  Mr. Ishikawa added that though Plaintiff lacked current diagnostic evidence or

25

26

27

28

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

surgical intervention, he has not significantly improved, his past work was done at the medium to heavy level, and a finding of disability would be appropriate under grid rule 202.06. *Id.*

Upon examination by the ALJ, Plaintiff testified that he lived with his wife and had completed freshman year in college. AR 36. The ALJ asked about Plaintiff's work through 2010 for Simplot, and Plaintiff said that he was running a loading area, would load trucks, and do weight scales for Anheuser Simona and also dry fertilizer. AR 36-37. Plaintiff further testified that in that role, he ran the plants and the nitric acid plant, doing the "A and the B job." AR 37. Plaintiff further stated that he worked on the sulfuric acid plant and sulfate plants, worked on 10340 reactors, and loaded and unloaded rail cars. *Id.* Plaintiff further stated that he washed the inside of tanks from the build-up in that position. *Id.* Plaintiff said that he had to lift bars that weighed approximately 75 to 80 pounds and put them on the doors of the rail cars. AR 37-38. Plaintiff added that when the side loads would get plugged, he and other workers would beat the bottom of the silo with a sledge hammer until it was cleared to run again. AR 38. Plaintiff further noted that there was "a lot of manual labor involved" and "a lot of climbing stairs and ladders." *Id.* Plaintiff testified that he was let go from that position after 25 years with that organization. *Id.* Plaintiff stated that in 2014 he worked for the Mendota Unified School District and had worked for Golden Pines prior to that position. *Id.* In his position for the Mendota Unified School District, he did minor jobs, repairs, hauled books and other items, cleaned things, and completed other necessary tasks. AR 38-39. Plaintiff said that he had to unload heavy items including books and freight from the trucks that would come in and bring the items to the classroom. AR 39. Plaintiff said that in that role he lifted approximately 50 to 100 pounds at times. *Id.* Plaintiff also stated that he did grounds maintenance and cleaning in the cafeteria in that role. *Id.* Plaintiff said that he left that job because the organization decided they did not need him anymore. *Id.* Plaintiff stated that he had not worked since that time. AR 39.

Plaintiff testified that his back problems and diabetes made it impossible for him to work. AR 40. He stated that when he would start to work, his sciatic nerve down to his leg would flare up and cause pain. *Id.* He said that this caused him to not be able to walk very far, and he used his handicap placard to avoid having to walk longer distances. *Id.* He stated that when he shopped, he grabbed a grocery cart immediately and used it as a walker, and he cannot enjoy the long walks he used to take.

3

1   *Id.*  He stated that this impacted his A1C, and that his sugar was 8.5.  *Id.*  He stated that he had

2   problems trying to control his diabetes, which made things bad for his body.  *Id.*  He stated that he

3   could not lift anything more than ten pounds and all local jobs were farming or industrial positions that

4   wanted applicants who could climb a ladder, jump off the back of a bed, or lift 100 pounds.  *Id.*

5   Plaintiff stated that the last time he went for a long walk was before he got hurt in 2014.  AR 40-41.

6   Plaintiff said that he passed the time during the day by watching a lot of TV and by briefly helping his

7   wife with yardwork before he would need to come back in.  AR 41.

8       Plaintiff said that there had been improvement in his back pain, as he had been taking Norco,

9   which "keeps it down to where it's tolerable."  *Id.*  He also stated that at the beginning of his back pain

10  hurting more than usual, the back pain hurt regardless of the number of Norco pills he took.  *Id.*

11  Plaintiff added that he tore up his back several times at work.  *Id.*  Plaintiff said that he went to therapy

12  for his back pain and the doctor sent him to a spine specialist shortly before the hearing to see what

13  they could do.  *Id.*  Plaintiff said that the spine specialist would get back to him following an MRI.

14  AR 41-42.  Plaintiff said that he had seen another specialist in 2014, had some MRIs done, and

15  received three epidurals for the pain in his back.  AR 42.  Plaintiff said that the pain "comes and goes,"

16  but would appear quickly if he tried to do anything strenuous.  *Id.*  In terms of household chores,

17  Plaintiff stated that he would wash his laundry and wash and put away dishes.  *Id.*  Plaintiff said that

18  he did not have many hobbies but would supervise a yard worker who he hired to mow the lawn and

19  do weeding.  AR 42-43.  Plaintiff said that he used to do yard work but could not do it at the time of

20  the hearing, and when he tried to do yard work "all that happens is [he] get[s] hurt" and would be

21  down for several days.  AR 43.  Plaintiff said the last time he tried to do yard work was when he was

22  feeling a little better in 2015 or 2016.  *Id.*  Plaintiff said that he drove, and that driving did not bother

23  him.  *Id.*  He stated that he would put a pillow on his seat to keep him comfortable while driving a

24  short distance.  *Id.*

25      Upon examination by Mr. Ishikawa, Plaintiff stated that he would take Norcos but they would

26  not alleviate the pain significantly when he was still working.  AR 44.  He further said that the

27  improvement he referred to in his testimony occurred because he stopped working.  *Id.*  Plaintiff

28  testified that he would take his cane or walking stick to get around if he was in pain or hurting.  AR

4

45.  Plaintiff said that he would leave the house approximately three times per week to go to the doctor or store.  Plaintiff stated that around when he first injured his back, his doctor told him that he did not think that he should get back surgery.  *Id.*

Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE") Dr. Thomas Mitchell.  AR 46-52.  The VE testified that he had not had prior personal or professional contact with Plaintiff, affirmed that he would be an impartial witness, and had not had prior discussions regarding the merits of the case.  AR 46.  The VE also testified that he was familiar with the Social Security Administration's definition of unskilled, semi-skilled, skilled, sedentary, light, medium, heavy, and very heavy work, and would inform the ALJ if his testimony conflicted with the Dictionary of Occupational Titles.  AR 47.  Plaintiff's attorney did not object to Dr. Mitchell serving as the VE.  *Id.*  The VE classified Plaintiff's position prior to 2010 as a composite position including: Plant Operator (DOT No. 550.585-030, light work, SVP 5) and Railroad Car Loder (DOT No. 921.565-010, heavy work, unskilled, SVP 2).  AR 47-48.  For the position with the school district, the VE classified that as a Groundskeeper position (DOT No. 406.687-010, medium work, unskilled, SVP 2, performed by Plaintiff at the heavy exertional level).  AR 48.

The ALJ then asked the VE hypothetical questions regarding an individual the same age, education, and vocational background of Plaintiff.  AR 49.  For the first hypothetical, the ALJ asked the VE to consider a hypothetical person who: could frequently climb ramps and stairs; could occasionally climb ladders, ropes, and/or scaffolds; could frequently crawl, crouch, kneel, and stoop; should not work in environments subjecting him to concentrated exposure to respiratory irritants such as gases, dust, smoke, and/or fumes; and should not work in environments subjecting him to more than moderate levels of background noise.  *Id.*  The VE testified that the individual would not be able to perform any of Plaintiff's past work and that there would not be transferable skills from the composite plant operator job.  *Id.*  The VE further testified that medium exertional level positions would be available, such as: Hand Packager (DOT No. 920.587-018, unskilled, SVP 2, medium work, with 160,000 jobs in the national economy); Linen Room Attendant (DOT No. 322.387-030; medium work, unskilled, SVP 2, with over 85,000 positions in the national economy); and Material Handler (DOT

5

No. 129.667-030, medium work, unskilled, SVP 2, with over 500,000 positions in the national economy). AR 50.

For the second hypothetical, the ALJ asked the VE to change the exertional level in the hypothetical to light rather than medium. *Id.* The VE testified that the individual would still not be able to perform any of the past work. *Id.* The ALJ then stated that there would be a grid issue as there would be no transferability of skills. *Id.*

The ALJ then asked the VE to return to the first hypothetical, and asked whether an individual who could stand and/or walk for four hours in an eight-hour workday could still perform the three jobs the ALJ listed. AR 50-51. The VE stated that this would restrict the individual to sedentary work. AR 51. The VE further stated that his testimony was consistent with the information in the Dictionary of Occupational Titles. *Id.*

Upon examination by Mr. Ishikawa, the VE said that the jobs listed in hypothetical one matched with the limitation of loud noises and moderate level "would play out in all those positions." *Id.* Mr. Ishikawa then stated that he did not believe that this was consistent with the Dictionary of Occupational Titles, as he believed that a hand packager had a noise intensity of loud. AR 52. The VE stated that, based upon his experience, the moderate level would be appropriate for a majority of those positions. *Id.*

Plaintiff then stated that he worked around loud machinery for 25 years and did not need a hearing aid despite being nearly deaf in one year. *Id.* Plaintiff added that when he left that position, he needed a hearing aid and his hearing deteriorated from there. *Id.* Mr. Ishikawa submitted that Plaintiff's medical records were consistent with light to less-than-light work. AR 53.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-27. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of

November 1, 2014 through the date last insured of December 31, 2017.  AR 17.  The ALJ identified the following severe impairments: degenerative disc disease of the lumbar spine, asthma, and diabetes mellitus.  AR 17.  The ALJ also found that Plaintiff's hypertension, osteoarthritis, hearing loss and vertigo did not cause more than a minimal restriction in Plaintiff's ability to work and were not severe. AR 18.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 18.

Based on a review of the entire record, the ALJ found that Plaintiff retained the RFC to perform medium work with the limitations that Plaintiff was limited to: lifting and carrying 50 pounds occasionally; lifting and carrying 25 pounds frequently; standing and/or walking for six hours in an eight-hour workday; sitting six hours in an eight-hour workday; frequently climbing ramps and stairs; occasionally climbing ladders, ropes, and scaffolds; frequently crawling, crouching, kneeling, and stooping.  AR 19-21.  The ALJ further included the limitation that Plaintiff should not work in environments subjecting him to concentrated exposure to respiratory irritants such as gases, dust, smoke, and/or fumes.  *Id.*  The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)."  *Id.*

Given this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 21.  However, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.  AR 22-23.  The ALJ noted that examples of jobs at the medium work level consistent with Plaintiff's RFC included: (1) Hand Packager (DOT No. 920.587-018, unskilled medium work, SVP 2, with 160,000 jobs nationally); (2) Linen Room Attendant (DOT No. 322.387-030, unskilled medium work, SVP 2, with 85,000 jobs nationally); and (3) Material Handler (DOT No. 129.667-030, unskilled medium work, SVP 2, with 200,000 jobs nationally).  AR 23.  The ALJ also found that the VE's testimony was consistent with the Dictionary of Occupational Titles.  *Id.* The ALJ therefore concluded that Plaintiff had not been disabled from November 1, 2014, through December 31, 2017, the date last insured.  *Id.*

///

///

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

1

**DISCUSSION**[4]

2          Plaintiff contends that the ALJ failed to offer clear and convincing reasons for discounting

3   Plaintiff's subjective complaints regarding back pain and spinal impairment, as Plaintiff testified that

4   he was more limited than the ALJ found.  (Doc. 11 at 6-9.)  Plaintiff also contends that the ALJ

5   improperly rejected the opinion of Plaintiff's physician Dr. Muhammad Akbar.  (Doc. 11 at 9-11; Doc.

6   16 at 2-3.)  Plaintiff further contends that the ALJ did not properly consider the limiting effects

7   imposed by Plaintiff's obesity.  (Doc. 11 at 11-12.)  Finally, Plaintiff contends that the ALJ's RFC did

8   not account for Plaintiff's hearing loss.  (Doc. 11 at 13-14.)

9          **A.  Plaintiff's Subjective Complaints**

10          Plaintiff contends that the ALJ failed to offer clear and convincing reasons for discounting

11   Plaintiff's subjective complaints regarding back pain and spinal impairment, as Plaintiff testified that

12   he was more limited than the ALJ found.  (Doc. 11 at 6-9.)  In his discussion of the impairments, the

13   ALJ noted that Plaintiff "alleged intermittent back pain, which prevented him from walking long

14   distances or lifting more than 10 pounds, but he was able to grocery shop unassisted if he leaned on

15   the cart and Norco was effective in improving his pain." AR 19 (also noting "The claimant completed

16   physical therapy, underwent injections, and was recently evaluated by a spine specialist, who advised

17   surgery was not necessary. Despite the alleged back pain, the claimant testified he washed dishes and

18   put them away, drove with a pillow, did the laundry, and assisted his wife with the house chores")

19          In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a

20   two-step analysis.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359

21   F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her

22   impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.

23   *Garrison*, 759 F.3d at 1014.  If the claimant satisfies the first step and there is no evidence of

24   malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only

25   by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

26

27   _____

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
28   arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific
     argument or brief is not to be construed that the Court did not consider the argument or brief.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  AR 19.  However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record.  *Id.*  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

First, the ALJ found that Plaintiff's subjective symptoms were inconsistent with treatment notes.  AR 20.  Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ first noted that the results from a May 2014 lumbar spine MRI indicated mild to moderate findings.  AR 20; 483-84 ("T11-12: Left posterolateral disc protrusion narrowing the inferior left neural foramen. T12-L1: Unremarkable. L1-2: Unremarkable. L2-3: Mild lateral disc bulges with no significant mass effect.  L3-4: Mild disc degeneration and annular bulge with mild bilateral inferior neural foramina narrowing.  L4-5: Disc degeneration and mild annular disc bulge. Bilateral facet arthropathy and ligamentum flavum hypertrophy. Minimal grade 1 anterior spondylolisthesis of L4 on L5. Mild relative central stenosis. Patent neural foramina.  L5-S1: Moderate disc space narrowing, posterior central/right paracentral broad-based disc osteophyte complex, with possible mass effect on the right S1 nerve root. No significant central stenosis. Mild-to-moderate left inferior neuroforaminal narrowing. Right neural foramen is patent.  The vertebral bodies demonstrate no suspicious lesion. No spondylolysis is identified.").  The ALJ also noted that Plaintiff's gait and station improved, returning to normal during the relevant period.  AR 20; 440 (December 2015 progress note noting "Gait: normal") 481 (May 2014 progress note noting "Gait and station: normal, heel walking normal, toe walking normal Back, Spine ribs and pelvis: Lumbar spine inspection : Lordotic curve: normal, Palpation: Tenderness: left lumbar paraspinals , ROM: mild decr flexion ext moderate and lateral bend moderate decreased, straight leg raise positive"); 750-51 (March 2021 report noting no chief complaint on file and that "No outpatient medications have been marked as taking for the 3/31/21 encounter (Appointment)").  The ALJ therefore appropriately considered the medical evidence as part of his analysis.

Second, the ALJ considered that Plaintiff's impairments were well-controlled with treatment and medication.  AR 19-20.  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."  *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983)).  The ALJ noted that Plaintiff was initially diagnosed with lumbar radiculopathy and treated with Hydrocodone Acetaminophen.  AR 20; 485 (April 2014 progress note including prescription of "HYDROCODONE-ACETAMINOPHEN 10-325 MG ORAL TAB… TIZANIDINE 2 MG ORAL TAB").  The ALJ then noted that in September 2014, Plaintiff reported epidural injections improved his symptoms without having gone to physical therapy.  AR 20; 467 (September 2014 progress note stating "He has had no PHYSICAL THERAPIST services. MRI noted. Had ESI with symptoms some improved.").  The ALJ further cited an October 2014 progress note in which Plaintiff reported that his lower back pain was resolving, his symptoms were much improved, and he felt he could return to work.  AR 20; 463-64 (October 2014 progress note stating "Doing much better. Thinks he is ready to return to work. Will continue with the rehab process… Assessment: Mechanical low back pain with L5 radiculopathy left resolving. Needs progressive flexibility and strength training including body mechanics. Symptoms much improved. Feels he is ready for return to work.").  The ALJ also noted that Plaintiff's gait and station improved, returning to normal during the relevant period.  AR 20; 440; 481; 750-51.  The ALJ further noted that during 2018 and 2019, Plaintiff reported that his pain was well-controlled by medication without significant side effects and he was able to do activities of daily living.  AR 20; 377 (June 2018 progress note noting "CHRONIC LOW BACK PAIN Note: Current regimen of pain medications controls chronic pain well without any adverse effects. Patient states medications helps to maintain activities of daily living"); 358-59 (April 2019 progress note stating "Patient does endorse analgesic benefit from medication… Patient reports medication does improve level of function… Patient does not report significant side effects from medications… Patient does not exhibit aberrant behaviors").  The ALJ also pointed to 2020 progress notes in which Plaintiff reported that the pain medication was controlling his chronic back pain without side effects and improved his level of function.  AR 20; 300 (June 2020 progress note stating "Current regimen of pain medications

controls chronic pain without any adverse effects… Patient does endorse analgesic benefit from medication… Patient reports medication does improve level of function… Patient does not report significant side effects from medications."); 716 (November 2020 progress note stating for chronic low back pain, "Current regimen of pain medications controls chronic pain without any adverse effects… Patient does endorse analgesic benefit from medication… Patient reports medication does improve level of function… Patient does not exhibit aberrant behaviors.").  The ALJ therefore appropriately examined Plaintiff's treatments and medication in assessing Plaintiff's symptoms testimony.

Third, the ALJ found that Plaintiff's subjective symptoms and difficulties were inconsistent with his relatively intact daily activities.  AR 29.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other grounds (identifying two-step analysis in assessing the credibility of a claimant's testimony regarding the subjective pain or intensity of symptoms).  Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.  *Id*. at 1113.

In assessing Plaintiff's daily activities, the ALJ first pointed to evidence from 2015 and 2016 showing that Plaintiff was independent as to activities of daily living and requested a physician sign off on a form so that he could be a youth camp counselor.  AR 20; 438 (December 2015 progress note noting "Functional Status: Fully independent with all ADLs"); 419 (July 2016 report noting "Pt is going to be a counsler [sic] at youth camp and has to have a general physical form signed off.").  The ALJ also noted that Plaintiff reported that he was able to maintain activities of daily living and improve functioning during 2018 and 2019.  AR 20; 358-59 (April 2019 progress note stating for Chronic Low Back Pain, "Patient does endorse analgesic benefit from medication… Patient reports medication does improve level of function… Patient does not report significant side effects from medications… Patient does not exhibit aberrant behaviors"); 377 (June 2018 progress note stating

"CHRONIC LOW BACK PAIN Note: Current regimen of pain medications controls chronic pain well without any adverse effects. Patient states medications helps to maintain activities of daily living"). The ALJ also noted that despite "the alleged back pain, the claimant testified he washed dishes and put them away, drove with a pillow, did the laundry, and assisted his wife with the house chores."  AR 19; 42 ("I'll go ahead and I'll clean dishes, wash dishes, and put them away. And wash my laundry."); 43 ("I can drive. It doesn't bother me. I'm very thankful of that. I have a nice pillow that I put in my seat and it seems to be comfortable enough where I can drive a little ways").  The ALJ therefore appropriately assessed Plaintiff's demonstrated daily activities in discounting Plaintiff's subjective complaints.

Plaintiff disputes whether Plaintiff's daily activities and reported improvement in back pain support that Plaintiff could lift more than ten pounds or walk for extended periods of time.  (Doc. 11 at 8-9.)  Plaintiff argues that the reported daily activities and intent to be a youth camp counselor did not demonstrate he could return to medium work.  *Id.*  Plaintiff contends that the record also demonstrates instances where medication did not control Plaintiff's pain.  *Id.*, *see* AR 453 (August 2015 report noting "may inc[rease] norco to 3 per day as 2 not controlling pain well.").  While Plaintiff puts forward his interpretation of the record, the ALJ also examined the record and found that Plaintiff's back pain was well-controlled through the years, citing to multiple treatment reports.  Where "evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (citing *Burch*, 400 F.3d at 679; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").  Plaintiff's alternate interpretation of the record therefore does not demonstrate that the ALJ erred.

The Court therefore concludes that the ALJ did not err in discounting Plaintiff's subjective complaints.

**B. Medical Opinion**

Plaintiff also contends that the ALJ improperly rejected the opinions of Plaintiff's physician Dr. Muhammad Akbar.  (Doc. 11 at 9-11; Doc. 16 at 2-3.)  Defendant responds that the ALJ did not

1   need to discuss Dr. Akbar's statements because they applied to a period too short to be relevant to

2   Plaintiff's claim.  (Doc. 15 at 15.)

3          Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the

4   agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. §

5   404.1520c.   Under the new regulations, the Commissioner does "not defer or give any specific

6   evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative

7   medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).

8          The Commissioner evaluates the persuasiveness of the medical opinions based on the

9   following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4)

10  specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with

11  the other evidence in the claim or an understanding of our disability program's policies and

12  evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5).  Supportability and consistency are the

13  most important factors.  20 C.F.R. § 404.1520c(b)(2).

14         Furthermore, the Ninth Circuit has "affirmed under the rubric of harmless error where the

15  mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion."

16  *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006); see also *Marsh v. Colvin*, 792 F.3d 1170, 1172

17  (9th Cir. 2015) (holding that the "harmless error analysis applies ... to assess the impact of the ALJ's

18  failure to even mention [a treating physician] or [his] notes, let alone its failure to give specific and

19  legitimate reasons that are supported by substantial evidence for rejecting a treating source's medical

20  opinion"); *Hernandez v. Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017) (holding that the ALJ

21  committed harmless error in misidentifying physician's notes); *Roy v. Colvin*, 656 F. App'x 816, 818–

22  19 (9th Cir. 2016) (holding the ALJ committed harmless error where she did not consider a reviewing

23  physician's opinion because she believed the physician was "referring to 'another individual of the

24  same name.' ").

25         On September 30, 2014, Dr. Akbar opined that Plaintiff's activity was modified as follows:

26  "Stand: Occasionally (up to 25% of shift); Walk: Occasionally (up to 25% of shift).  Bend at the waist:

27  Occasionally (up to 25% of shift). Torso/spine twist: Not at all.  Climb ladders: Not at all.  Use of

28  scaffolds/work at height: Not at all.  Lift/carry/push/pull no more than 10 pounds."  AR 257.  Dr.

1  Akbar further noted that Plaintiff "is placed on modified activity at work and at home from 9/29/2014

2  through 10/27/2014." *Id.*

3        Here, the ALJ did not discuss or otherwise include Dr. Akbar's opinion in the ALJ's opinion.

4  AR 12-27.  However, any error by the ALJ is harmless because the medical opinion did not meet the

5  duration requirement.  *See* 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do

6  any substantial gainful activity by reason of any medically determinable physical or mental

7  impairment which can be expected to result in death or which has lasted or can be expected to last for

8  a continuous period of not less than 12 months.").  The restrictions included in Dr. Akbar's opinion

9  lasted less than one month, from September 29, 2014, through October 27, 2014.  AR 257.  Because

10  the opinion only includes restrictions for one month, the lack of discussion of Dr. Akbar's opinion is

11  ultimately nonprejudicial to Plaintiff and therefore harmless error.

12        Plaintiff argues that the failure to discuss this opinion was prejudicial to Plaintiff, as Dr.

13  Akbar's opinion was consistent with Plaintiff's back pain allegations; Dr. Akbar's opinion

14  contradicted the ALJ's RFC assessment regarding Plaintiff's lifting, standing, and walking

15  restrictions; and Dr. Akbar was "the only medical source to provide an opinion during the adjudicated

16  period and he was the only treating or examining doctor to provide specific functional work

17  restrictions." (Doc. 11 at 11.)  However, Dr. Akbar's opined limitations only lasted until October 27,

18  2014, prior to the alleged onset date of November 1, 2014.  Furthermore, Plaintiff does not explain

19  how restrictions lasting for only one month effectively contradict the RFC assessment which

20  considered impairments lasting for 12 months or more.  The Court therefore disagrees with Plaintiff's

21  argument that the omission of the opinion was prejudicial.

22        Accordingly, the ALJ did not commit harmful error by not discussing Dr. Akbar's opinion.

23  **C.  Obesity Assessment**

24        Plaintiff next contends that the ALJ failed to consider the severity and limiting effects of

25  Plaintiff's obesity, including its effects on Plaintiff's diabetes and back pain.  (Doc. 11 at 11-12)

26  (citing *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003)).  Defendant contends that the ALJ was not

27  required to assess obesity as an impairment because Plaintiff did not allege disability based on obesity,

28

Plaintiff failed to show a disability based upon obesity, and Plaintiff did not assert any functional limitations based on obesity that the ALJ did not capture in the RFC assessment. (Doc. 15 at 12-13.)

As an initial matter, the Ninth Circuit has found that a claimant is unable to raise an issue before the federal court that was not raised at the administrative hearing. *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999). The Ninth Circuit held that "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Id.* at 1115; *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) (concluding a claimant waived an issue not raised during the administrative proceedings); *Howard v. Astrue*, 330 Fed. App'x 128, 130 (9th Cir. 2009) (finding the plaintiff's argument concerning limitations caused by depression were waived where he was represented by counsel at the hearing, and counsel "never mentioned depression as a limitation"). Following *Meanel* and *Shaibi*, district courts have determined that an issue is waived where an attorney had the opportunity to raise an issue before the ALJ and did not do so. *See, e.g.*, *Guerrero v. Berryhill*, No. 3:16-cv-01229-WQH-NLS, 2017 WL 4174257, at *3 (S.D. Cal. Sept. 21, 2017), report and recommendation adopted, No. 16-cv-1229-WQH-NLS, 2018 WL 823012 (S.D. Cal. Feb. 12, 2018); *Shaw v. Comm'r of Soc. Sec. Admin.*, No. C-07-3379 EMC, 2008 WL 1734761, at *6 (N.D. Cal. Apr. 14, 2008) (finding "the argument was waived because [the claimant] failed to assert the argument during the proceedings before the ALJ," where he was represented by counsel).

Here, neither Plaintiff nor his attorney raised the issue of obesity as a disabling impairment before the ALJ or previously claimed that Plaintiff's obesity was a disabling impairment, exacerbated his existing impairments, resulted in any functional impairments, or impaired his ability to work. AR 28-54. At the hearing with the ALJ, while Plaintiff emphasized his back pain and diabetes, he did not mention his obesity, assert that it exacerbated an existing impairment, or explain how it limited his functioning. *Id.* Because Plaintiff was represented by counsel at the administrative hearing and did not raise the obesity limitation or related evidence—including in the hearing brief or when asked "what issues now would make it not possible for you to work" —Plaintiff waived the issue. *See* AR 40 (Plaintiff responding that his back pain and diabetes prevented him from working); AR 265-67 (representative briefs emphasizing back pain but noting broadly that this "appeal is not limited to the

issues identified here in above"); *Meanel*, 172 F.3d at 1115 (claimants represented by counsel "must raise all issues and evidence at their administrative hearings" or they are waived on appeal) (emphasis added); *Guerrero*, 2017 WL 4174257, at *3 ("Ninth Circuit precedent… makes clear that a claimant who is represented by counsel waives any issues or evidence not presented at his or her administrative hearing"). Plaintiff is not entitled to raise the obesity limitation, and evidence related thereto, for the first time in his appeal before the district court.

Furthermore, Plaintiff's reliance upon the Ninth Circuit's opinion in *Celaya v. Halter*, 332 F.3d 1182 (9th Cir. 2003) to demonstrate ALJ error is inapposite. In that case, the defendant had argued that a multiple impairment analysis was not appropriate as the claimant had not raised obesity as a disabling factor. *Celaya*, 332 F.3d at 1182. While examining what "triggers inclusion of a factor in a multiple impairment analysis," the Ninth Circuit highlighted three issues:

> First, [obesity] was raised implicitly in Celaya's report of symptoms. Second, it was clear from the record that Celaya's obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses. Third, in light of Celaya's pro se status, the ALJ's observation of Celaya and the information on the record should have alerted him to the need to develop the record in respect to her obesity.

*Id.* The Ninth Circuit found remand appropriate as the ALJ's "exclusion of obesity from his analysis is error in that he was addressing an illiterate, unrepresented claimant who very likely never knew that she could assert obesity as a partial basis for her disability." *Id.* at 1183. The Ninth Circuit further noted that the "record gives clear reason for concern that the PRFCA failed to take Plaintiff's obesity into account," as a physician assessed that the claimant "should never crawl, and only occasionally bend, squat, kneel, and reach above shoulder level… solely on the basis of [claimant]'s obesity, without consideration of her by-then-controlled diabetes and hypertension." *Id.* at 1184.

This case is distinct from *Celaya*. First, obesity was not raised either explicitly or implicitly in Plaintiff's reported symptoms. *See* AR 28-54; 265-67. Second, it is unclear from the record that obesity was close to the listing criterion or could have exacerbated Plaintiff's reported illnesses. Plaintiff's obesity received approximately six mentions in the record, none of which demonstrate its impacts upon Plaintiff's functioning. *See* AR 58-59 (State agency medical consultant Dr. W.

Jackson's November 2020 assessment listing "Obesity" as an "Other" priority and "Non Severe"); 72-73 (State agency medical consultant Dr. K. Mohan's February 2021 assessment listing "Obesity" as an "Other" priority and "Non Severe"); 372 (August 2018 physical exam noting "obese" in findings); 438-41(December 2015 report notes earlier finding of obesity, "SEVERE OBESITY EQUIVALENT (BMI 35-39.9 W CO-MORBIDITY) 02/03/2015," but does not discuss obesity in assessment or patient plan); 459-60 (February 2015 reports noting assessment of "SEVERE OBESITY EQUIVALENT (BMI 35-39.9 W CO-MORBIDITY)").  Third, Plaintiff did not represent himself, but instead was represented at the hearing by his attorney Robert Ishikawa.  AR 28-54.  Additionally, no medical opinion was based solely on Plaintiff's obesity impairments, and both state agency medical consultants listed Plaintiff's back disorder and diabetes mellitus as the primary and secondary impairments, respectively, with obesity as a non-severe, "other" priority.  *See* 58-59 (State agency medical consultant Dr. W. Jackson's November 2020 assessment listing "DDD (Disorders of Back-Discogenic and Degenerative)" as "Primary" priority and "Severe," "Diabetes Mellitus" as "Secondary" priority and "Non Severe," and "Obesity" as "Other" priority and "Non Severe"); 72-73 (State agency medical consultant Dr. K. Mohan's February 2021 assessment listing "DDD (Disorders of Back-Discogenic and Degenerative)" as "Primary" priority and "Severe," "Diabetes Mellitus" as "Secondary" priority and "Non Severe," and "Obesity" with "Other" priority and "Non Severe"); 894 (January 2022 statement from Dr. Bimalroy Shah stating "This is to certify that Mr. Alexander Modesto have chronic low back pain since my first visit in 2014. Patient has been evaluated by spine physician recently.").

Accordingly, the ALJ did not err by not including an assessment of Plaintiff's obesity in his opinion.

### D.  RFC Assessment & Hearing Loss

Plaintiff further argues that the ALJ erred by not considering Plaintiff's hearing loss impairment in formulating the RFC.  (Doc. 11 at 13-14.)  Defendant responds that the ALJ appropriately considered Plaintiff's hearing loss as a non-severe impairment given that the medical evidence and diagnoses were from 2021 reports.  (Doc. 15 at 13-15.)

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). Indeed, "an ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." *Pinto v. Kijakazi*, No. 1:21-cv-00585-SKO, 2022 WL 17324913, at *9 (E.D. Cal. Nov. 29, 2022) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)); see also *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (finding RFC determination need not directly correspond to a specific medical opinion). The Ninth Circuit has also made clear that "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

Here, the ALJ considered Plaintiff's hearing loss as part of his opinion, ultimately finding Plaintiff's hearing loss non-severe and did not cause more than a minimal restriction on Plaintiff's ability to work. AR 18. The ALJ summarized the evidence regarding Plaintiff's hearing as:

> In 2021, the claimant reported difficulty hearing. He wore a hearing aid on the right side and alleged his hearing was worsening in his left ear. The claimant also reported occasional dizziness, but without headaches. He was referred to audiology and diagnosed with bilateral hearing loss (Exhibit 3F, pp. 32-33). During a follow up visit, the claimant had ear wax removed a bilateral ear canal wash, which revealed no redness, clear ear canals, no swelling, and no signs of infection (Exhibit 3GF, p. 20)... Although the claimant alleged severe hearing loss, an otoscopic inspection revealed clear canals and normal appearing tympanic membranes (Exhibit 4F, p. 62). He was subsequently diagnosed with severe-to-profound, sensorineural hearing loss bilaterally in April 2021, which was four years after the date last insured (Exhibit 4F, p. 62).

AR 18; 773-74 (March 2021 visit report noting that Plaintiff wore a hearing aid and reported his left ear hearing was getting worse, assessed as "Ears Nose Throat: positive for hearing loss," and referred to audiology.); 761 (March 2021 visit report noting "Ear canal clear: yes, bilateral. Redness: no, bilateral. Swelling: no, bilateral. Signs of infection: no Foreign body noted in either ear: No."). The relevant April 2021 visit report showed that Plaintiff reported hearing loss since early childhood, with severe left hearing loss and mild right hearing loss, and that Plaintiff reported that the hearing in his right ear had worsened significantly after a severe vertigo episode in 1979. AR 885. Plaintiff also reported during that visit that he got a hearing aid for his right ear in approximately 1980. *Id.* At the

same visit, an "Otoscopic Inspection revealed clear canals and normal appearing tympanic membranes," and Plaintiff was diagnosed with "Severe-to-profound, sensorineural hearing loss bilaterally but with left worse than right." *Id.* The doctor further found that Plaintiff had "60% word discrimination ability right at 95dBH" and could "not establish SRT or speech discrimination on the left." *Id.*

Plaintiff interprets the evidence as demonstrating that Plaintiff's hearing loss was significant and occurred during the relevant period, based upon the 2021 reports, Plaintiff's reporting that he had worn a hearing aid for at least five years, and Plaintiff's allegations of prior hearing loss. (Doc. 11 at 13-14.) However, given the lack of cited evidence of impairing hearing loss from the alleged onset date of November 1, 2014, through December 31, 2017, the date last insured, and the potential that Plaintiff's hearing declined after December 31, 2017, the Court cannot conclude that this is the only interpretation of the evidence. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir.1995)). Despite Plaintiff's interpretation, the Court cannot conclude that the ALJ erred in finding this impairment non-severe and determining that it had no more than minimal impact on Plaintiff's ability to work. *See Vertigan*, 260 F.3d at 1049 ("it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.")

Accordingly, the ALJ did not err by finding Plaintiff's hearing loss non-severe and not further incorporating it into the RFC assessment.

///

///

///

///

///

///

///

///

///

1

**CONCLUSION AND ORDER**

2     Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

3 evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS

4 HEREBY ORDERED as follows:

5     1.    Plaintiff's appeal from the administrative decision of the Commissioner of Social

6           Security is denied; and

7     2.    The Clerk of this Court be directed to enter judgment in favor of Defendant Martin

8           O'Malley, Commissioner of Social Security, and against Plaintiff Alexander Modesto.

9     These Findings and Recommendations will be submitted to the United States District Judge

10 assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being

11 served with these findings and recommendations, the parties may file written objections with the

12 Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

13 Recommendations."  The parties are advised that the failure to file objections within the specified time

14 may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.

15 *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391,

16 1394 (9th Cir. 1991)).

17

18 IT IS SO ORDERED.

19     Dated:   **March 22, 2024**              /s/ *Barbara A. McAuliffe*

20                                              UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28